OPINION
Eddie Watts ("Watts") appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of Watts' daughter to the Montgomery County Children Services Board ("CSB").
The state's evidence established the following facts.
On January 10, 1997, Destiny Watts ("Destiny"), her sister Krista Payne, and her brother Jeremy Goss[1] came to the attention of CSB following an incident in which Watts admitted to striking Jeremy. Watts and his then wife, April Goss ("Goss"), separated, and the three children remained with their mother. Eventually, Goss moved back in with Watts, and CSB filed a dependency complaint regarding the children and requested temporary custody. On April 10, 1997, the trial court adjudicated Destiny dependent and granted temporary custody to CSB.
CSB developed a case plan stating what Watts needed to accomplish to remedy the situation resulting in the grant of temporary custody to CSB.[2] The plan required Watts to establish paternity for Destiny, obtain adequate housing, and complete an anger management program.
On February 11, 2000, CSB requested permanent custody of Destiny. On July 13, 2000, following a permanent custody hearing held on June 30, 2000, the magistrate granted permanent custody to CSB. The trial court overruled Watts' objections to the magistrate's decision on November 27, 2000, and Watts appealed. On June 29, 2001, we reversed and remanded the case because we found that the trial court had failed to review the magistrate's decision de novo. See In re Watts (June 29, 2001), Montgomery App. No. 18665, unreported. Upon remand, the trial court again overruled Watts' objections to the magistrate's decision, and Watts appealed.
Watts raises two assignments of error on appeal.
 "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING HIS OBJECTION TO THE MAGISTRATE'S DECISION WHEN IT FOUND THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT THE MINOR CHILD COULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE TIME OR AT ALL.
 "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING HIS OBJECTION TO THE MAGISTRATE'S DECISION WHEN IT DETERMINED THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT THE COMMITMENT OF THE CHILD TO THE PERMANENT CUSTODY OF THE AGENCY WAS IN THE CHILD'S BEST INTEREST.
We will address both of Watts' assignments of error together.
The trial court's decision to award permanent custody of Destiny to CSB must be supported by clear and convincing evidence establishing that the child could not have been placed with either parent within a reasonable amount of time and that granting permanent custody to CSB was in the child's best interests. See R.C. 2151.414(B)(2); In re William S. (1996), 75 Ohio St.3d 95, 99. In determining whether a child can be placed with either parent within a reasonable amount of time, the trial court considers sixteen factors. See R.C. 2151.414(E). CSB points us to two of those factors in this case:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
The trial court concluded that there was clear and convincing evidence that Destiny could not be placed with either of her parents within a reasonable amount of time. With respect to Watts, the court found that Watts had failed to complete his anger management case plan objective, had a history of violence, and had visited with Destiny only sporadically. The court also noted that Destiny had special needs and that Watts was unable to meet those needs.
Watts argues (1) that the trial court improperly required him to demonstrate that he had the ability to care for Destiny, (2) that CSB failed to assist him in completing his case plan objectives, (3) that he substantially complied with his case plan objectives, (4) that he would have fully complied had CSB assisted him, (5) that he has remedied the conditions that resulted in Destiny's removal, (6) that he visited Destiny regularly, and (7) that he has a strong bond with Destiny.
It is not clear from the trial court's decision that it required Watts to demonstrate that he had the ability to care for Destiny. Rather the trial court noted that Destiny had special needs and that Watts was unable to parent her. Furthermore, the entire purpose of a case plan is to remedy the situation that resulted in a child's removal. The central issue is whether the parent has the ability to care for the child, and this would clearly be a relevant inquiry in considering the best interests of the child. In any case, however, this argument is irrelevant as the trial court's decision rested upon Watts' failure to complete his case plan and regularly visit with Destiny.
Watts' second through fifth arguments address whether he met his case plan objectives. The only objective at issue is whether Watts addressed his anger management issues. There is no dispute that he obtained adequate housing and established paternity. With regard to the anger management program, Watts testified that he had completed all but one class of the seven class program and that the last class would be completed in the week following the hearing.
The trial court noted that Watts was in the process of getting anger management training at the time of the hearing "even though this [had been] requested of him some three years ago." The court also noted that Watts had indicated that he no longer had an anger issue because he no longer had a relationship with Goss, who had been the recipient of the anger and violence. Thus, the court concluded that Watts had failed to complete his case plan objectives as of the time of the hearing. The court also concluded that Watts had not put forth sufficient effort to be reunited with his daughter. We agree. While we recognize that Watts had almost completed his anger management program at the time of the hearing, the fact that he had not completed it in the three years prior to the hearing is significant. See, e.g., In re Conner (Nov. 2, 2001), Montgomery App. No. 18808, unreported; Maye v. Maye (May 4, 2000), Franklin App. No. 99AP-529, unreported ("Permanent placement of a child outside the home is not an abuse of discretion where a parent has historically been unable to comply with a case plan for a period of years, and then comes into court with `clean hands' for a period of a few weeks."). Furthermore, the testimony at the hearing established that Watts had a history of violence and anger issues and that he had failed to correct those issues. For example, while admitting the domestic violence issues with Goss, Watts appeared to blame her behavior for his anger and appeared to believe that he would have no anger issues if he had no contact with her. However, Watts has had multiple arrests for violence-related incidents that were not related to Goss, one of which was for abuse of a child in his home. We believe that these facts supported the trial court's conclusion that Watts had not substantially completed his case plan objectives.
Watts also argues that he failed to complete his anger management program before the hearing because CSB failed to assist him in finding a program. However, the caseworker, William Stull, testified that he had referred Watts to at least two programs. The trial court is in the best position to determine the credibility of witnesses. See Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23. The trial court found Stull to be credible, and we will defer to that finding. Thus, the trial court's conclusion that Watts had failed to remedy the conditions that caused Destiny to be removed from his home was supported by clear and convincing evidence.
Watts' failure to remedy the conditions that caused Destiny's removal would be sufficient to justify the trial court's finding that Destiny could not be placed with him within a reasonable time. See R.C.2151.414(E)(1). However, the trial court also concluded that Watts had failed to visit Destiny regularly. Watts admitted in his testimony that there were times when he missed visitation due to car trouble or because Goss was ill. However, he asserted that he always notified that agency and that he visited his daughter regularly. Stull testified that Watts' visitation had been sporadic, sometimes only once or twice a month, and that there had been a period in 1999 when Watts did not visit Destiny at all. As above, we will defer to the trial court's credibility determination on this issue. Thus, the trial court's finding that Destiny could not be placed with Watts within a reasonable amount of time was also supported by Watts' irregular visitation with Destiny. See R.C. 2151.414(E)(4).
The trial court's awarding of custody of Destiny to CSB also required a finding that doing so was in her best interests. The trial court is to consider all relevant factors, including the following in determining the best interests of the child:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(C).
As discussed above, the trial court concluded that Watts had failed to regularly visit with Destiny. Furthermore, the record demonstrateds that Destiny has a good relationship with her foster parent, and the guardianad litem noted in his report that Destiny had questioned whether her father was a "bad man," whether he was there to "beat her," and whether he was going to "shoot her." Therefore, the first factor weighed in favor of granting custody to the state. The second and third factors likewise weighed in favor of granting permanent custody to CSB. The guardian ad litem recommended that CSB receive custody, and Destiny had been in the temporary custody of CSB for more than twelve months of a twenty-two month period ending after March 18, 1999. Finally, Destiny had been in foster care for most of her life, and the record revealed that she had developed "severe behavioral problems" and had had "many foster givers (sic)." Clearly, Destiny needed permanence in her life. The trial court did not err in concluding that granting permanent custody of Destiny to CSB was in her best interests.
Watts' first and second assignments of error are overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
[1] Destiny is the child of Watts and his ex-wife April. Krista and Jeremy are April's children from previous relationships.
[2] Although Goss and Watts maintained an on-and-off relationship throughout much of the time between the removal of Destiny and the permanent custody hearing, they separated several months prior to the hearing, and Watts was pursuing a divorce and living with another woman. A case plan was also developed for Goss, and Goss was also divested of parental rights. However, we are concerned only with Watts in this appeal.